UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IVETTE KELLEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LAWRENCE PUBLIC SCHOOLS and ) <br> THE CITY OF LAWRENCE, ) <br> MASSACHUSETTS, ) <br> ) <br> Defendants. ) | Case No. 16-cv-11116-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                       December 27, 2018

### I.  Introduction

Plaintiff Ivette Kelley ("Kelley") has filed this lawsuit against Defendants Lawrence Public Schools and the City of Lawrence, Massachusetts (collectively, "Defendants"). D. 1. Following this Court's ruling on Defendants' motion for judgment on the pleadings, Kelley's remaining claims are for wrongful termination (Count I) and a violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601-54 ("FMLA") (Count IX). D. 32. Defendants have moved for summary judgment on both counts. D. 57. For the reasons stated below, the Court ALLOWS the motion.

### II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the

outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of "demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### III. Factual Background

The following facts are drawn primarily from Defendants' statement of material facts, D. 60, Kelley's statement of disputed facts, D. 64, Kelley's memorandum in opposition of Defendants' motion for summary judgment,[1] D. 62, and other supporting documents and are undisputed unless otherwise noted.

Kelley was hired as a full-time counselor for the Lawrence Public Schools for the 2011-2012 school year. D. 60 ¶ 1; D. 20 at 1. During Kelley's first year in the position, she took medical leave for approximately five months, from late November through early May. D. 60 ¶ 2; D. 20 at

---

[1] Kelley submitted a statement of disputed material facts, D. 64, but it lists disputed topics, rather than a response to the numbered paragraphs in the Defendants' statement of undisputed facts, D. 60. The Court, therefore, considered Kelley's opposition as well for Kelley's contentions regarding the facts.

1-2. After returning from leave in May 2012, she was reappointed for the 2012-2013 school year. D. 60 ¶ 3; D. 62 at 6. During that school year, she sometimes attended follow-up medical appointments during the school day. D. 20 at 2; D. 62 at 6. Kelley provided Defendants with notes from her doctor regarding the necessity of these appointments. D. 62 at 10; D. 63-13; D. 63-14. At the end of the 2012-2013 school year, Kelley received a negative performance evaluation. D. 62 at 3; 7. She was not placed on a "Personal Improvement Plan." Id. at 3. According to Kelley, a Personal Improvement Plan is required before the school can take adverse employment against an employee covered by the teachers' contract with Lawrence Public Schools. Id. On June 4, 2013, Kelley was notified in writing that she would not be reappointed when her current appointment ended on June 24, 2013. D. 60 ¶ 4; D. 60-2.

In 2014, Kelley applied for another position with the Lawrence Public Schools. D. 60 ¶ 5. Lisa Conran, the principal of the school to which Kelley applied, informed Kelley on December 1, 2014 that "[t]he Human Resources Department called to inform [Conran] that there [was] a 'do not rehire' document for [Kelley] so [Conran] [was] unable to hire [Kelley] . . . ." D. 60 ¶ 5; D. 60-3; D. 63-1. In connection with Kelley's application, Conran submitted an Employee Information Sheet ("EIS") to the Lawrence Public School Central Office. D. 60 ¶ 6; D. 60-4; D. 60-5 at 3. A Lawrence Public School Central Office staff member wrote "nonrenewed / can't hire" on the EIS. D. 60 ¶ 7; D. 60-5 at 3. According to Defendants, the EIS is an internal document and neither the EIS nor the internal communications between Conran and the Central Office were disclosed to any other school district. D. 60 ¶ 8.

After Kelley was not reappointed in 2013, she became an interim adjustment counselor for Salem Public Schools in Salem, Massachusetts. D. 62 at 3. Subsequently, Kelley worked as a behavior specialist for Salem Public Schools for about one year, after which time she resigned. Id.

3

at 3-4. Since that time, Kelley has sought but has not been able to find work as a school counselor. Id. at 4. According to Kelley, her failure to obtain a position as a counselor is the result of Defendants "using a 'Do Not Hire' directive to keep [Kelley] from gaining employment." Id. Also according to Kelley, this Do Not Hire directive "misrepresent[s] her medical situation," Id. at 9, but Kelley did not discover the "false statements" in the Do Not Hire directive until around the time she filed the complaint in June 2016, D. 1 at 7.

## IV. Procedural History

Plaintiffs instituted this action on June 18, 2016. D. 1. Defendants moved for judgment on the pleadings on October 13, 2016, D. 10, which the Court allowed in part and denied in part. D. 32. The Court heard the parties on the Defendants' pending motion for summary judgment and took the matter under advisement. D. 68.

## V. Discussion

### A. <u>Count I: Wrongful Termination</u>

Kelley alleges that she was wrongfully terminated in violation of public policy from her position as a counselor with Lawrence Public Schools. Wrongful termination against public policy is a common law claim under Massachusetts law. See DeRose v. Putnam Mgmt. Co., 398 Mass. 205, 210 (1986).

In Massachusetts, a public school counselor's employment protections depend on whether the counselor is considered a "teacher" or an at-will employee. Mass. Gen. L. c. 71, § 41. Because Kelley did not serve as a counselor with the Lawrence Public Schools for three consecutive school years, she was not a "teacher . . . entitled to professional teacher status," id., and was, therefore, an

"employee[] at will," Mass. Gen. L. c. 71, § 42.[2] In Massachusetts, an at-will employee can be fired at any time "for almost any reason or for no reason at all." Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472 (1992) (internal citation and quotations omitted). Accordingly, to raise a cognizable claim, Kelley must show that her discharge falls within the limited exception prohibiting employers from firing at-will employees "for reasons that violate public policy." Flesner v. Technical Commc'ns Corp., 410 Mass. 805, 810 (1991). Certain grounds for terminating an at-will employee have been deemed categorically unlawful due to public policy. For example, terminating an at-will employee for asserting a protected right (e.g., filing for workers' compensation), refusing to commit an illegal act (e.g., perjury) or for doing what the law requires (e.g., serving on a jury) violates public policy. Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149-50 (1989).

Kelley asserts that she was wrongfully terminated by Defendants in retaliation for taking FMLA leave. A cause of action for wrongful termination in violation of public policy, however, is inapplicable where "there is a comprehensive remedial statute, [and] the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme." Perez v. Greater New Bedford Voc. Tech. Sch. Dist., 988 F. Supp. 2d 105, 113 (D. Mass. 2013) (quoting Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 513 (1985)), aff'd, 397 Mass. 1004 (1986)) (internal quotation marks omitted). At least one court in this Circuit has previously held that the FMLA is one such remedial statute, Minahan v. Town of E. Longmeadow, No. 12-cv-30203-MAP, 2015 WL 668451, at *1 (D. Mass. Feb. 17, 2015), as have other federal courts considering similar state law claims for wrongful termination, see, e.g., Perez v. Hospitality

---

[2] Kelley appears to concede that she was an employee at will. See D. 62 at 7 (noting that "Plaintiff does not, nor did she represent herself as 'tenured'").

5

Ventures-Denver LLC, 298 F. Supp. 2d 1110, 1111 (D. Colo. 2004) (dismissing plaintiff's claim for wrongful discharge in violation of the FMLA because "[w]here the only wrong alleged is the violation of the FMLA, there is no basis for augmenting a remedial scheme that full compensates an employee for its violation"); Johnson v. Honda of Am. Mfg., 221 F. Supp. 2d 853, 858 (S.D. Ohio 2002) (holding that "the remedial scheme set forth in the FMLA adequately protects the public policy expressed in the statute, thereby obviating the need for a common law wrongful discharge claim"); Gearhart v. Sears, Roebuck & Co., 27 F. Supp. 2d 1263, 1278 (D. Kansas 1998) (concluding that plaintiff could not bring retaliatory discharge claim because "she had an adequate federal statutory remedy under the FMLA"). Because Plaintiff has not raised any arguments as to why the Court should depart from such persuasive authority regarding claims of wrongful termination based on FMLA rights, the Court ALLOWS the Defendants' motion for summary judgment on Count I.

### B. Count IX: FMLA Claim

Count IX of Kelley's complaint alleges that, after taking FMLA leave during the 2011-2012 school year, "[Kelley's] follow up doctor's appointments were held against her, and she was blacklisted for time lost that the school system paid her [sic]." D. 1 at 8. The FMLA prohibits an employer from discharging or discriminating against an employee for exercising the rights afforded by the Act, 29 U.S.C. § 2615(a), and grants a private right of action to employees who suffer damages as a result of a violation, 29 U.S.C. § 2617(a)(2). The FMLA has a limitations period of two years, or three years for willful violations, "after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c). Defendants argue that Kelley's claims under the FMLA are time-barred and that Kelley has also failed to establish a

*prima facie* case for unlawful discrimination based on her taking FMLA protected leave. The Court agrees with Defendants on both fronts.

### 1. Statute of Limitations

Defendants argue, as they did in their motion for judgment on the pleadings, that Kelley's claims under the FMLA are time-barred because Kelley did not sue until more than three years after June 4, 2013—the date on which Kelley found out she would not be reappointed. Kelley, on the other hand, alleges that her claim is timely because her FMLA claims only began to accrue in 2016 when she first discovered that the Do Not Hire list contained "false statements [] about her." D. 1 at 7.

At the motion for judgment on the pleadings stage of this litigation, the Court held that Kelley had successfully invoked the "discovery rule" to save her claim from dismissal for untimeliness. D. 32. The discovery rule dictates that "[a]ccrual, i.e., the date the statute of limitations begins to run, is not the date a plaintiff is allegedly injured, but the date, if different from the date of the injury, the plaintiff discovers that [she] has been injured." Hammond v. Interstate Brands Corp., No. IP01-0066-CM/S, 2002 WL 31093603, at *11 (S.D. Ind. Aug. 28, 2002) (applying the discovery rule to FMLA claim). For the purposes of that motion, accepting as true Kelley's allegation that she did not find out about the Do Not Hire list and its false statements until 2016, as was required at that juncture, the Court held that "at [that] early stage of litigation the Court [could] not dismiss Count IX on [the] basis [of it being time-barred]." D. 32.

Kelley's burden to invoke the discovery rule is greater, however, at the summary judgment phase of litigation. To oppose a motion for summary judgment relying upon the discovery rule, Kelley must show that "a person in [her] position would <u>not reasonably</u> have known or been put on notice of the existence of the injury and the cause of the injury" until after the statute of

limitations for her claims expired. Estate of Sarocco v. GE, 939 F. Supp. 91, 96 (D. Mass. 1996) (emphasis in original). At this stage, Kelley "may not rest upon mere allegation . . . but must set forth specific facts showing that there is a genuine issue for trial." Braga v. Hodgson, 605 F.3d 58, 60 (1st Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 256) (internal quotation marks omitted); see Gonzalez-Pina v. Guillermo Rodriguez, 407 F.3d 425, 431 (1st Cir. 2005) (remarking that "'[t]he mere existence of a scintilla of evidence' in the nonmoving party's favor is insufficient to defeat summary judgment") (citation omitted); Betances v. Sea-Land Serv., 248 F.3d 40, 43 (1st Cir. 2001) (affirming that "statements contained in a memorandum or lawyer's brief are insufficient, for summary judgment purposes, to establish material facts"); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks and citations omitted) (explaining that party opposing summary judgment must submit "definite, competent evidence" that is not "conjectural" or "merely colorable"); Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 214 (D. Mass. 2002) (noting that "the First Circuit will reject responses by nonmovants that adduce statements not based on personal knowledge or that adduce conjectural or conclusory allegations") (internal quotation marks and citation omitted).

In arguing that she could not reasonably have been aware of her FMLA retaliation until the 2016 discovery of the so-called "Do Not Hire" list, Kelley relies upon two documents. One is Kelley's EIS, which contains an internal notation stating: "nonrenewed / can't hire." D. 60-4. The second is an email from Principal Conran informing Kelley that "there [was] a 'do not rehire' document for [Kelley]." D. 60-3. Even considering these documents, Kelley has not shown any evidence, circumstantial or otherwise, that there is a connection between her exercise of FMLA rights and her nonrenewal. The other contentions—not evidence—Kelley offers on this point are two theories: one is the fact that she has been unable to find work in her field for several years

and the other is her pledge that, if allowed to proceed to trial, she will "provid[e] witness [sic] who can testify how the 'Do Not Hire' list blacklists [Kelley] by misrepresenting [Kelley's] medical situation." D. 62 at 9. None of these documents or theories constitute specific, admissible evidence to rebut Defendants' claims that there was no Do Not Hire list, much less one that contained medical or other private information about Kelley. Defendants, furthermore, have attested that neither the EIS nor the emails between Conran and the Central Office regarding Kelley's "do not rehire document"[3] were disclosed to any other school district. D. 60 ¶ 8; D. 60-5 at 3 (sworn interrogatory responses from Defendants). Although Kelley disputes this evidence, Kelley has not provided or pointed to any evidence to the contrary or explained why she cannot provide such evidence.[4] Cf. Fed. R. Civ. P. 56(d) (permitting nonmovant to submit affidavit or declaration attesting to why certain facts are unavailable to them). Accordingly, the Defendants' evidence regarding the alleged "Do Not Hire document" remains uncontroverted. See Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (quoting D. Mass. L.R. 56.1) (providing that "material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties"); Rodio v. R.J.

---

[3] Defendants refer to the document as the "do not rehire" document, while Kelley refers to it as the "Do Not Hire" directive or list. All of these references are to the exhibit D. 60-4.

[4] At oral argument, Kelley's counsel argued that discovery was incomplete and that Kelley was missing documents from Defendants. The Court interpreted Counsel's statement as a reference to Kelley's earlier motion to compel. See D. 49. The parties were heard by Magistrate Judge Dein on July 10, 2018 regarding Kelley's motion to compel, D. 67, and Magistrate Judge Dein granted in part and denied in part the motion, D. 65. Kelley did not move to compel any further documents, nor point to any deficiencies in Defendants' document production in her summary judgment filings. Kelley has also given no indication of how these additional documents would compel a different result on the pending motion. To the extent counsel has argued the documents would support Kelley's allegations of pretext, the Court need not reach the question given Kelley's failure to make out a *prima facie* case of retaliation, as discussed below.

9

Reynolds Tobacco Co., 416 F. Supp. 2d 224, 227 (D. Mass. 2006) (deeming defendant's facts admitted where plaintiff disputed facts, but failed to present supported facts that controverted assertions in defendant's statement of facts).

In sum, as of June 4, 2013, Kelley knew that she would not be reappointed and the later discovery of the so-called "Do Not Hire" document is unmoored from Kelley's protected conduct or adverse employment action. Accordingly, June 4, 2013 marks the beginning of the accrual of her claims. Because Kelley did not sue until June 18, 2016, the Court holds that Kelley's claims are time-barred under the two or three-year limitations period of the FMLA.

       2.    *FMLA Retaliation Claim*

Even if Kelley had filed her FMLA claim in a timely manner, however, Kelley still would not prevail on the merits. Because Kelley has not provided any direct evidence of retaliation based on exercising rights under the FMLA—the proverbial "smoking gun," Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996), Kelley's case is governed by the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 69 (1st Cir. 2015) (applying McDonnell Douglas to FMLA claims). Under this framework, the burden falls initially to Kelley to set forth a *prima facie* case of retaliation. Id. To establish a *prima facie* case, Kelley must demonstrate that 1) she availed herself of a protected right under the FMLA, 2) she was adversely affected by an employment decision and 3) the adverse employment decision was causally related to the exercise of her rights under the FMLA. Id. If Kelley establishes a *prima facie* case, then the burden shifts to Defendants "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. Id. (internal citation and quotation marks omitted). If the Defendants can provide such a legitimate reason, Kelley "retains the ultimate burden of showing that the employer's stated reason for

10

terminating [her] was in fact a pretext for retaliating against [her] for having taken protected FMLA leave." Id. (internal citation and quotation mark omitted).

        a)      *Prima Facie* Case

The parties do not dispute the first element of the *prima facie* case, i.e., that Kelley availed herself of FMLA leave. The parties dispute the second element, which is whether Kelley experienced an adverse employment decision.[5] The Court, however, need not resolve this dispute, because Kelley has not demonstrated the necessary third element of causality.

Kelley relies upon the following evidence to show that her termination was causally related to her exercise of FMLA rights: she took FMLA leave during the 2011-2012 school year, she requested and received permission from her supervisor to attend medical appointments for follow-up care and treatment during the day during the 2012-2013 school year, she attended those medical appointments, she was not placed on a Personal Improvement Plan—as was required by the school's own policy—following a negative employee evaluation at the end of the 2012-2013 school year and she was terminated shortly thereafter. This evidence is insufficient to demonstrate a causal connection between Kelley's exercise of FMLA rights and her termination for several reasons.

First, Kelley's allegations of temporal proximity between her FMLA protected leave and termination are insufficient to make out a *prima facie* case. In some circumstances, temporal proximity between protected activity and an adverse employment action may be sufficient to warrant an inference of causation for the purposes of a *prima facie* showing. See Surprise v.

---

[5] Kelley argues that her termination at the end of the 2013 school year was an adverse employment action. Defendants disagree, contending that Kelley was not terminated, but simply not re-appointed for the 2013-2014 school year. Therefore, Defendants continue, Kelley's claim "is premised upon the defendants' failure to rehire her," which does not constitute an adverse employment decision. D. 59 at 5.

Innovation Grp, Inc., 925 F. Supp. 2d 134, 143 (D. Mass. 2013) (holding that "extremely close temporal proximity" of less than one week between protected conduct and termination sufficed for plaintiff to make out *prima facie* case of discrimination); Mole v. Univ. of Mass., 442 Mass. 582, 592 (2004) (noting that "if adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity, an inference of causation is permissible"). The undisputed facts here, however, show that Kelley took FMLA leave from November 2011 to May 2012, was reappointed for 2012-2013 and did not receive the letter notifying her she would not be reappointed for 2013-2014 until June 2013—over a year after her FMLA leave. The June 2013 letter, therefore, can hardly be said to have come in the "immediate aftermath" of Kelley's FMLA protected conduct, particularly with a full year's reappointment in the interim. See Mole, 442 Mass. at 592 (emphasizing that "the mere fact that one event followed another is not sufficient to make out a causal link") (quoting MacCormack v. Boston Edison Co., 423 Mass. 652, 662 n.11 (1996)) (internal quotation marks omitted).

Second, beyond strained temporal connections, Kelley has offered "no other competent evidence of retaliation," Mesnick, 950 F.2d at 828, circumstantial or otherwise. In sum, Kelley has failed to provide a sufficient causal link between Defendants' refusal to reappoint her and her protected activity under the FMLA.

          b)      <u>Legitimate Reason and Pretext</u>

Having concluded that Kelley's FMLA claim is time-barred and that she has failed to make out a *prima facie* case of discrimination, the Court need not reach the remaining steps of the McDonnell Douglas burden shifting framework.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment, D. 57.[6]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[6] Kelley's opposition is entitled a "motion in opposition of Defendants' motion for summary judgment." D. 61. To the extent that this "motion" sought any relief other than opposing Defendants' motion for summary judgment, the Court DENIES same.